UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 09-CR-30005-MAP |
| | ) | |
| RYAN JAMES CRAIG | ) | |

<u>**MEMORANDUM AND ORDER REGARDING PETITIONER'S
AMENDED MOTION TO VACATE SENTENCE**</u>
(Dkt. No. 76)

May 28, 2014

**PONSOR, U.S.D.J.**

### I. INTRODUCTION

Petitioner Ryan James Craig has filed a motion to vacate his sentence pursuant to § 2255 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255. (Dkt. No. 76.) He argues that trial counsel was ineffective for failing to obtain mental health records and a mental health evaluation of Petitioner prior to sentencing, and that this court erred in denying counsel's mid-hearing request for a continuance to obtain these records and evaluation. The court will deny the motion to vacate and dismiss the petition.

### II. BACKGROUND

On March 26, 2009, Petitioner was charged with one count of conspiracy to counterfeit United States currency,

under 18 U.S.C. § 371; two counts of passing counterfeit currency, under 18 U.S.C. § 472; one count of possessing a digital image of U.S. currency with the intent to defraud, under 18 U.S.C. § 474(a); and one count of false representation of a Social Security number, under 4 U.S.C. § 408(a)(7)(B). On September 28, 2009, Petitioner pled guilty to all five counts, and the sentencing was set for January 22, 2010. The sentencing was continued twice, first to February 27, 2010, and then to March 23, 2010, in response to motions from Petitioner's counsel. The sentencing was continued by the court two additional times, first to March 25, and then to April 2, 2010.

It is undisputed that at the sentencing the court correctly calculated the applicable advisory Guideline range at 92-115 months. At the conclusion of the sentencing hearing, the court imposed a sentence at the bottom of the Sentencing Guideline range and ordered that it be served consecutively to a sentence Petitioner was serving based upon an entirely independent conviction in the Middle District of Pennsylvania.

On March 2, 2011, the First Circuit summarily affirmed the court's decision following an appeal in which Petitioner argued, in part, that his mental health history had not been adequately ventilated by this court. The First Circuit in

its affirmance stated, "[T]he court made clear that an evaluation, however complete and detailed, would not affect Craig's sentence." (Judgment of USCA 2, Dkt. No. 64.)

The issue of Petitioner's mental health history featured prominently at the sentencing proceeding and is central to the § 2255 petition currently before this court. Considerable detail about this history was available to the court at the time of sentencing in the Presentence Report ("PSR"), including the fact that Petitioner had received a psychological evaluation in 2001 that revealed a history of mental health issues. This history included a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD") at age 6, which was treated for many years with the drug Ritalin. At age 7, Petitioner was diagnosed with Tourette's Syndrome and was treated with Haldol, Anafranil, and Clonidine. The PSR noted that Petitioner carried a diagnosis of Oppositional Defiant Disorder, Personality Disorder, antisocial and obsessive compulsive traits, and ADHD. Despite these diagnoses, according to the PSR, Petitioner at the time of his interview stated that he had no interest in mental health treatment.

At the sentencing hearing, the court acknowledged Petitioner's "difficult mental health issues," (Sentencing Tr. 44:15, Dkt. No. 49)(hereinafter "Sentencing Tr."), and

stated that he is "obviously a human being who's very troubled." (Sentencing Tr. 45:22.)

Based on Petitioner's very serious criminal history, his repeated predatory behavior, and the fact that he committed the crimes charged while on probation based upon a sentence imposed by one federal court <u>and</u> while on supervised release based upon charges pending before a second federal court, the government argued for a sentence at the top of the Guideline range, 115 months.

Two and a half hours into the sentencing proceeding, after hearing the government's sentencing presentation, counsel for Petitioner revealed to the court that, in counsel's opinion at least, she had done an inadequate job of developing evidence relating to Petitioner's mental health history prior to the sentencing. Based on conversations with Petitioner that morning, she concluded that additional records should have been obtained and a formal evaluation conducted prior to the sentencing. Petitioner's counsel, an outstanding and well-respected attorney, took responsibility for neglecting to examine these issues, describing it as her "failure." (Sentencing Tr. 71:25) During this disclosure, the court inquired as to whether counsel was requesting a further continuance, to which counsel replied that she was.

The court denied the motion, recognizing that

Petitioner suffered from ADHD and Tourette's Syndrome. (Sentencing Tr. 78:17-25.)  The court concluded that it had "so little confidence that even the most careful and detailed report with regard to Mr. Craig's mental health situation would affect the sentence that I think it's a waste of everybody's time to detour into that area right now."  (Sentencing Tr. 79:13-17.)  Acknowledging Petitioner's mental health issues, the court indicated that it would sentence him to a facility where these problems could be addressed.  (Sentencing Tr. 80:7-15.)

During Petitioner's allocution, he spoke articulately about his desire to change his life, but never indicated that he felt his criminal conduct resulted from his mental health issues, never requested treatment, never sought an evaluation, and did not request a continuance of the sentencing hearing.  (Sentencing Tr. 88-92.)

Following this, the court, as noted, sentenced Petitioner to a term at the bottom of the Guideline range, 92 months, with the understanding that it would be served consecutively to a sentence imposed out of the Middle District of Pennsylvania, as noted above.  In sentencing Petitioner, the court noted at least twice that Petitioner needed "some very serious mental health counseling," (Sentencing Tr. 93:9-10), and that the court hoped that

Petitioner, while incarcerated, would take advantage of "the kind of mental health treatment that I really believe that Mr. Craig will need if he's going to really make a break [from] his past," (Sentencing Tr. 95:23-25).

Following the sentencing and its affirmance, Petitioner's new attorney arranged to have him evaluated by a qualified clinician who conducted a number of psychological tests and investigated Petitioner's mental health history. This evaluation confirmed the diagnoses contained in the PSR, including Antisocial Personality Disorder, ADHD, and Tourette's Syndrome (in remission), and added another diagnosis of Asperger's Disorder. The clinician's report tied these mental health disorders to Petitioner's criminal conduct.

### III. DISCUSSION

The heart of Petitioner's argument in support of his petition pursuant to § 2255 is (1) that his counsel at sentencing was ineffective for failing to investigate his mental health background adequately and obtain a mental health evaluation prior to sentencing and (2) that the court abused its discretion by not granting the motion to continue the sentencing hearing to allow these initiatives to happen.

To succeed on the ineffective assistance of counsel claim, Petitioner must establish that: (1) "counsel's

representation fell below an objective standard of reasonableness" and (2) there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 & 694 (1984).

For purposes of this memorandum, the court will accept Petitioner's argument that counsel's performance at the sentencing fell below an objective standard of reasonableness. Counsel conceded at the sentencing hearing that she felt that she had failed Petitioner by not following up with an investigation of his mental health background.

The Supreme Court has recognized that an attorney has an obligation to "conduct a thorough investigation" of a defendant's background and a failure to do this may be deemed objectively unreasonable. Williams v. Taylor, 529 U.S. 362, 395-97 (2000). Moreover, the fact that trial counsel did present some mitigating evidence does not excuse a full investigation. Sears v. Upton, 561 U.S. 945 (2010).

While Petitioner may clear the first hurdle in demonstrating ineffective assistance of counsel, the second hurdle -- a showing of prejudice -- presents an insuperable barrier on this record. The additional mental health information, while providing a modest amount of additional

detail, would not have been sufficient to persuade the court either to impose a sentence below the Guideline range, or to impose a sentence that was concurrent with Petitioner's prior federal sentence.  At the time of sentencing, the court was aware of nearly all the details with regard to Petitioner's mental health history, considered these details, and explicitly found that any additional development of the record or further evaluation would not affect the sentence.  The mere possibility that some additional helpful information might have altered the court's sentencing decision presents too speculative a scenario to provide a basis for relief.

Petitioner's current counsel emphasizes the fact that the new material now available following the post-sentencing evaluation of Mr. Craig draws an explicit connection between his mental health issues and his criminal conduct.  Although the court may not have explicitly noted it at the sentencing, it was obvious during that proceeding that Petitioner's extraordinary course of predatory conduct was indeed connected to a significant degree to his mental health issues.  Apart from some additional detail, this is nothing new.  At the same time, many people suffer from maladies as serious as, or more serious than, Petitioner's, yet they refrain from such extraordinary behavior.

As the sentencing judge, and with the additional information now before me, I must say that the amplification of the mental health record would not in any way have affected my bottom-of-the-Guideline sentence. I took Petitioner's mental health issues into account in imposing the sentence, and even noted that I hoped he would be housed in a facility that would provide him with appropriate treatment. Given the horrendous nature of Petitioner's criminal history, including convictions from three separate federal courts prior to the age of 30, and a crime spree occurring when he was on probation from one of those courts and on pretrial release from the other, a sentence at the bottom of the Guideline range was as generous as the court could be.

The decision to make the sentence consecutive to, rather than concurrent with, the sentence out of the Middle District of Pennsylvania relied, reasonably, on the fact that the criminal conduct in Pennsylvania was entirely independent and separate from the criminal conduct that underlay the sentence before this court. In short, nothing in the new report, and nothing in the somewhat expanded presentation of Petitioner's mental history, would have made the slightest difference in the court's sentence.

The absence of any prejudice flowing from counsel's

arguably deficient performance makes the abuse of discretion claim based on the court's decision not to continue the sentencing proceeding obviously insupportable.  Since nothing would have been gained from a continuance, the denial of the motion to continue provides no basis for relief under § 2255.

## IV.  CONCLUSION

For the forgoing reasons, Petitioner's Amended Motion to Vacate (Dkt. No. 76) is hereby DENIED.  The petition is ordered DISMISSED.  Judgment will enter for the government.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge